# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| FRANKLIN ASHLEY, | ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:19-CV-309 CAS |
| DR. WILLIAM MCKINNEY, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff (registration no. 506654), an inmate at Potosi Correctional Center ("PCC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have enough funds to pay the entire filing fee and will assess an initial partial filing fee of $30.82. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $154.08. Accordingly, the Court will assess an initial partial filing fee of $30.82.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

### The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. Plaintiff names the following individuals as defendants in this action: William McKinney (Doctor, Corizon, Inc. ("Corizon")); Diana Larkin (Nurse, Corizon); Connie James (Nurse, Corizon); Loraine Coleman (Nurse, Corizon); Steve Vossick[1] (Nurse, Corizon); Sarah Skaggs (Nurse, Corizon); Cindy Griffith (Warden, PCC); Ernest Jackson (Director Dental Service, Missouri Department of Corrections ("MDOC")); Jewel Cofield, Director of Operations, MDOC); and T. Bredeman, Medical Director, MDOC). Plaintiff brings this action against the defendants in both their individual and official capacities.

**A. Tooth Pain and Resulting Head Injury**

Plaintiff asserts that he was incarcerated in Temporary Administrative Segregation Confinement ("TASC") at PCC in May of 2017.[2] He asserts that on May 20, 2017, he began

---

[1] In the case caption, defendant Steve Vossick is referred to as "Vossic," but is consistently referred to as "Vossick" throughout the body of complaint. In this order, the Court will spell defendant's name as "Vossick."

[2] Plaintiff makes a conclusory statement in his complaint that he was wrongfully placed in TASC at PCC because he was "racially and/or religiously targeted" due to his "African American ethnicity and/or Islamic faith." However, plaintiff has not made any allegations in his complaint regarding his purported placement in TASC, nor statements regarding how he believes his rights were violated during his confinement in administrative segregation at PCC during 2017. For the Due Process Clause to be implicated, an inmate subjected to segregation must

3

suffering tooth pain and filed a medical service request ("MSR"), requesting that he be seen by a dentist. Plaintiff asserts that he was escorted to the Administrative Segregation "sick-call room" and seen by Nurse Barton[3], who acknowledged that he needed to be seen by a dentist. Plaintiff asserts that he was told PCC did not currently have a dentist, but she gave him some "I-Prin"[4] [sic] and sent him back to his cell.

Plaintiff claims that he went two more weeks without dental attention, and the pain continued to increase. On or about June 3, 2017, he filed a second MSR requesting that he be seen by medical staff. Plaintiff does not state whom he saw, but he claims that an unnamed person told him PCC did not have a dentist and they did not know when one would be hired.

Plaintiff states that on or about June 20, 2017, the pain had increased severely, he was having trouble sleeping, eating, and hearing out of one ear, and he believed he had developed an infection in his tooth, or an abscess. Thus, he declared a medical emergency once again, asking to see a "dentist/doctor." Plaintiff claims he was seen by Nurse Skaggs at this time, who told him there was no dentist available. Plaintiff alleges that when he asked Nurse Skaggs to provide him with antibiotics to treat the abscess, Nurse Skaggs said that only a doctor could provide the antibiotics, but she failed to schedule plaintiff with a doctor at that time.

On July 8, 2017, plaintiff asserts that he once again declared a medical emergency due to loss of sleep, severe pain, and loss of appetite. Plaintiff claims he was told by unnamed nursing

---

have been subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472 (1995). Plaintiff's allegations do not indicate that he has suffered the type of atypical and significant hardship which might conceivably create a liberty interest. *Id.* at 485-86. Therefore, the Court finds plaintiff is not pursuing such a claim.

[3]Nurse Barton has not been named as a defendant in this action.

[4]The Court believes plaintiff is referring to a form of ibuprofen or similar non-steroidal anti-inflammatory drug.

4

staff that he was scheduled to see a dentist on July 12, 2017; however, when that date came, he was not taken to see a dentist.

Although plaintiff does not provide a date, he claims that he told Warden Cindy Griffith about his delay in receiving dental care and the lack of a dentist on staff at PCC. He claims he told Ms. Griffith about these issues prior to filing an Institutional Resolution Request ("IRR") and then again in an IRR, and she failed to send plaintiff to an outside dentist for care.

Plaintiff alleges that on July 14, 2017, after going several days without the ability to eat due to pain in his tooth, he blacked out and hit his head, causing a laceration above his eye. Plaintiff asserts that he was taken to the "mid-night shift nurse" Connie James, to address the laceration. Plaintiff states that Nurse James called Doctor McKinney regarding plaintiff's condition and, after speaking with McKinney, James placed a thin bandage on the wound. James then told plaintiff that McKinney would examine the wound in the morning.

Plaintiff states that McKinney examined the wound in the morning but failed to do a concussion check on plaintiff. Plaintiff claims that he continues to suffer with severe headaches as a result of the purported delay in treating his head injury. Plaintiff does not state whether defendant McKinney treated his dental issues at that time.

Plaintiff states generally that he filed a Grievance Appeal regarding the denial of his grievance to Ms. Griffith, and the appeal was denied. He asserts in a conclusory manner that it was reviewed by defendants Cofield and Bredeman who he believes are responsible for having final review of all responses to medical-related grievance appeals filed by inmates.

**B. Heart Attack**

Plaintiff asserts that on September 17, 2017, while housed in general population at PCC, he declared a medical emergency due to severe chest pains. Plaintiff states that he began having shortness of breath, tightening in his chest, and pain sometime around 5:15 p.m. He alleges that

5

after his declaration of medical need, he was "made to walk" to the prison emergency area by an unnamed person, whereupon he informed the Correctional Officer on duty, C.O. Silvery, that he was suffering from severe pain in his chest. Plaintiff asserts that C.O. Silvery told the nurse on duty, Steve Vossick, that plaintiff appeared to be having a heart attack, as she had observed her father have similar symptoms when he had a heart attack. However, plaintiff claims that defendant Vossick "ignored and/or disregarded" plaintiff's symptoms and told plaintiff after hearing his symptoms that he believed plaintiff was suffering heartburn and gave plaintiff antacid tablets and placed him in a medical cell for observation.

Plaintiff states he was held in a medical cell for an hour before Vossick conducted an EKG on plaintiff, after which Vossick told plaintiff he was unable to get a proper reading because the equipment was "old and outdated." Plaintiff states that he told Vossick his pain was a "10" and increasing, but Vossick placed him back in a medical cell so he could call the on-call doctor for instructions. Plaintiff claims he was held in the medical cell for approximately an hour and a half before Vossick conducted a blood test on plaintiff to determine if he was having a heart attack. Plaintiff claims that after taking his blood, at around 7:30 p.m., Vossick told plaintiff the test was negative, but that he would run an additional test to make sure everything was okay. Plaintiff claims he told Vossick at this time he was having problems breathing and his pain was unbearable.

At 12:30 a.m., the "midnight shift nurse" took plaintiff's blood and around 1:00 a.m. returned to tell plaintiff he was having a heart attack. Plaintiff claims the nurse then told plaintiff that the paramedics were coming to get him. Plaintiff states that when the paramedics arrived, they scolded the nurse for neglecting plaintiff for over seven hours while he was having a heart attack.

Plaintiff seeks injunctive relief and compensatory damages in this action.

## Discussion

The Eighth Amendment protects plaintiff from a confinement that involves cruel and unusual punishment through deliberate indifference to his serious medical needs. Deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

To prevail on a deliberate indifference claim, plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants knew of but deliberately disregarded such need. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011).

The Court will issue process on the following defendants for either a delay in treatment and/or deliberate indifference to plaintiff's serious medical needs: Nurse Sarah Skaggs and Nurse Steve Vossick.

By June 20, 2017, plaintiff had purportedly suffered with tooth pain for an entire month. He had reported to medical three times for the issue, and he was telling Nurse Skaggs that his pain had increased severely, he was having trouble sleeping, eating, and hearing out of one ear. Moreover, according to his allegations, which the Court must take as true, he was stating that he believed he had developed an infection in his tooth, or an abscess. This was the third time plaintiff asked for a dentist at PCC, and none was provided. Additionally, when he asked for antibiotics, no doctor visit was scheduled. Plaintiff has stated enough in his allegations against Nurse Skaggs to pass initial review for a deliberate indifference to his serious medical needs in her individual capacity under the Eighth Amendment.

Similarly, taking plaintiff's allegations as true, he alleges that Nurse Vossick knew the EKG machine was "old and outdated" but failed to test plaintiff's blood to see if he was having a heart attack until over two hours after plaintiff came to the medical unit complaining of symptoms of a heart attack. Moreover, plaintiff asserts that he had a witness, Correctional Officer Silvery, who told Nurse Vossick that the symptoms plaintiff was exhibiting were like those when her father had his heart attack. Additionally, Vossick failed to follow up with an additional blood test after the first came back negative, even though plaintiff continued to have symptoms of a heart attack, and a different nurse gave him a blood test five hours later that had a positive result. Plaintiff has stated enough in his allegations against Nurse Vossick to pass initial review for a delay in treatment claim in his individual capacity under the Eighth Amendment.

Plaintiff, however, has not alleged enough to state a deliberate indifference to his serious medical needs with respect to Nurse Connie James or Doctor McKinney. When he passed out and hit his head, Nurse James treated his head wound and called the doctor, in addition to having him seen by Doctor McKinney within several hours of his incident. Although plaintiff may disagree with the treatment given by Nurse James and Doctor McKinney, specifically noting that he does not believe Dr. McKinney provided him with a concussion check, mere disagreement with medical care is not enough to rise to a deliberate indifference claim. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

Further, plaintiff has not stated enough in his allegations to make a claim for relief against supervisors Diana Larkin (Nurse, Corizon), Loraine Coleman (Nurse, Corizon), Ernest Jackson (Director, Dental Service, MDOC), Jewel Cofield (Director of Operations, MDOC) or T. Bredeman (Medical Director, MDOC).

Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin*

*v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). Plaintiff asserts that each of these individuals should be liable for what occurred to him because they are supervisors of medical operations at either Corizon or MDOC. Plaintiff has not set forth any facts indicating that any of the named defendants were directly involved in or personally responsible for the alleged violations of his constitutional rights. And general responsibility for supervisory responsibilities cannot establish personal involvement. *See, e.g., Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Woods v. Goord,* 1998 WL 740782, at *6) (S.D.N.Y. October 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983).[5] As a result, the complaint fails to state a claim upon which relief can be granted with respect to defendants Larkin, Coleman, Jackson, Cofield and Bredeman.

The Court will issue process as to Cindy Griffith (Warden) in her individual capacity as to plaintiff's allegations that he told defendant Griffith of his serious medical needs relating to his delay in receiving dental care and the lack of a dentist on staff at PCC. Plaintiff claims he told Ms. Griffith about these issue prior to filing an Institutional Resolution Request ("IRR") and

---

[5]Plaintiff's conclusory statements that Cofield and Bredeman were responsible for reviewing grievance appeals throughout the region and this should make them liable for the alleged constitutional violations in this instance are without merit. Supervisory defendants like Cofield and Bredeman cannot be held vicariously liable under § 1983 for the actions of a subordinate. *See Iqbal,* 129 S. Ct. at 1948. To state a claim, the plaintiff must plead that the supervising official, through his or her own individual actions, has violated the Constitution. *Id.* Where, as here, the alleged constitutional violation requires proof of an impermissible motive, the complaint must allege adequately that the defendant acted with such impermissible purpose, not merely that he or she knew of a subordinate's motive. *Id.*

in a subsequently filed IRR, and she failed to send plaintiff to an outside dentist for care. As pleaded, plaintiff has alleged enough to pass initial review for a deliberate indifference to his serious medical needs in violation of the Eighth Amendment against Cindy Griffith in her individual capacity as to his dental claim only.

Finally, the Court will dismiss the official capacity claims against defendants Griffith, Vossick and Skaggs. Naming an official in his or her official capacity is the equivalent of naming the entity that employs the official, in this case, Corizon for defendants Nurses Skaggs and Vossick and MDOC for Warden Cindy Griffith. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Naming Cindy Griffith her official capacity is also the equivalent of making a claim against the State of Missouri. *Will*, 491 U.S. at 71. "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." *Id.* As a result, the complaint fails to state a claim upon which relief can be granted against Cindy Griffith in her official capacity.

To state a claim against Nurses Vossick and Skaggs in their official capacities, plaintiff must allege that a policy or custom of Corizon is responsible for the alleged constitutional violations. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). The instant complaint does not contain any allegations that a policy or custom of Corizon was responsible for the alleged violations of plaintiff's constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted against Nurses Skaggs and Vossick in their official capacities.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis is **GRANTED**. [Doc. 2]

**IT IS FURTHER ORDERED** that plaintiff shall pay an initial filing fee of $30.82 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendant Cindy Griffith in her individual capacity by serving her through the waiver agreement maintained with the Missouri Attorney General's Office.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendants Steve Vossick and Sarah Skaggs in their individual capacities by serving them through the waiver agreement the Court maintains with Corizon, LLC.

**IT IS FURTHER ORDERED** that pursuant to 42 U.S.C. § 1997e(g)(2), defendants Cindy Griffith, Steve Vossick, and Sarah Skaggs shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants William McKinney, Diana Larkin, Connie James, Loraine Coleman, Ernest Jackson, Jewel Cofield, and T. Bredeman because as to these defendants, the complaint is legally frivolous or fails to state a claim upon which relief may be granted, or both.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants Cindy Griffith, Steve Vossick, and Sarah Skaggs in

their official capacity because, as to these claims, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5: Prisoner Standard.

An Order of Partial Dismissal will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  21st  day of August, 2019.